IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CASE NO. 4:09CR89 |
| | § § § | |
| RICHARD ALAN ARLEDGE | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DISQUALIFYING RYAN K. LURICH AND FRIEDMAN & FEIGER, LLP AS <u>COUNSEL FOR DEFENDANTS</u>**

Before the Court is the Government's Motion to Disqualify Ryan K. Lurich and his law firm, Friedman & Feiger, LLP (Dkt. 113). At this time, Lurich represents three defendants, Arledge, Farr, and Saintignan in a criminal case filed in this district, styled *United States of America v. Richard Arledge et. al.*, 4:09cr89. He also represented another defendant in the case, Ham, who is now represented by independently retained counsel, and purportedly shared confidential information with Rustyn Thomas, another independently represented defendant in the case. Defendant Arledge also has retained co-counsel in this case, Stephen Jones.

According to the superseding indictment, Arledge was the owner and operator of Richard Arledge Suzuki. All the above named defendants are charged in Count 1 of the Superseding Indictment with a violation of 18 U.S.C. §1956(h), conspiracy to launder monetary instruments. Ham and Arledge are also named in separate counts for the intent to launder monetary instruments. The Government alleges that these defendants entered into a conspiracy with others to conduct financial transactions affecting interstate commerce involving the proceeds of specified unlawful

1

activity. The illegal activities that are alleged to have been disguised include drugs and prostitution, among others.

The Government alleges that individuals who obtained monies from illegal activities would purchase luxury automobiles through the efforts of the above four named individuals. According to the Government, these four accepted cash payments knowing that they represented proceeds of unlawful activities. Some of the above-named individuals are alleged to have given advice to wrongdoers on how to structure payments to evade reporting requirements for cash transactions as required by federal law. Among other allegations, Arledge is alleged to have doctored titles to hide the true owner of certain vehicles. The defendant Saintignan is alleged to have arranged for certain individuals to make direct monthly payments for vehicles instead of using a bank draft.

There is no dispute that the Saintignan, Ham and Farr worked for Arledge at his dealership or business. The Government alleges that these defendants at various times accepted cash payments for cars and that the cash was derived from illegal activities. Farr is alleged to have sold vehicles to individuals for which some cash was paid which represented the proceeds from illegal activities. As the Government notes, Lurich has, at various times, claimed to represent all the above named defendants. The Government also alleges that Lurich represented another employee, Thomas, who will likely testify against Arledge (and maybe others).

Having reviewed the record in the case and hearing argument in a August 13, 2009 hearing, having reviewed supplemental briefing in the matter, and having found there was an actual conflict in Lurich's prior or current representation of multiple defendants and witness, the Court held additional hearings on September 2 and 3, 2009, pursuant to the guidelines set forth by the Fifth

Circuit in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975) to determine whether he could proceed in his multiple representation.

At the first hearing Lurich, his co-counsel, Stephen Jones, and three of the interested defendants (Arledge, Farr, and Saintignan) appeared. All were represented by Lurich at the hearing. Ham, who is now represented by separate counsel, also attended the hearing, but his counsel was unable to attend, so the Court did not take any statements from him at that time. At the second hearing, however, Ham appeared with counsel and was questioned by the Court. Lurich and counsel for the Government were also present at the second hearing.

In following the *Garcia* directives, the Court held a hearing to determine whether there was an issue as to a knowingly and voluntary waiver by defendants of the conflict. *Garcia* and its progeny direct that the investigation be more than a rubber stamp approval of a defendant's stated wishes.

At the hearing, all defendants were sworn and questioned by the Court regarding their understanding of the conflict of interest. All defendants were warned by the Court that the maximum sentence for Count 1 is twenty years. The Court explained that each defendant had a right to effective assistance of counsel free from the taint of a conflict of interest. The Court further explained that Lurich's continued representation of any or all defendants presented a potential conflict. Each defendant acknowledged that he had discussed the conflict with Lurich or other counsel. The Court also explained that any one of the defendants could object to Lurich's continued representation.

The Court explained that Lurich may have obtained confidential information from each of the individual defendants. The Court also informed the defendants that this information might be unwittingly disclosed by Lurich. The Court informed the defendants of the potential consequences of such disclosure including a finding of guilt or an increased sentence should they be found guilty. Each of the defendants acknowledged that they understood the consequences but still desired to have Lurich as counsel. The Court also admonished the defendants that waiving their right to insist on conflict free counsel amounted to a waiver of any appeal as to conflict whether by a direct appeal or 2255. Both Farr and Saintignan stated that Arledge was taking care of the costs of their defense.

Lurich has steadfastly maintained that he is an ethical lawyer and has consulted the rules and finds that no conflict exists in his representation of three defendants in a conspiracy case to launder monetary instruments. Lurich has also provided written waivers from at least two of the named defendants waiving any conflict of interest. He and his co-counsel Jones argue that, in their opinion, there is no conflict to multiple representation at this time because all defendants share a common defense. However, even Jones acknowledges that no one can see what the future might hold. Jones and Lurich also maintain that each of these defendants has a right to the counsel of their choice and all have agreed to Lurich as their counsel.

The Fifth Circuit's most recent explanation of how *Garcia* is applied clearly outlines the balancing test the Court must conduct here. In *U.S. v. Sanchez Guerrero*, 546 F.3d 328 (5th Cir. 2008), the Fifth Circuit explained:

> The district court did not abuse its discretion in disqualifying Guerrero's attorney, Womack. Womack was attempting to represent Guerrero and his brother, who were both in leadership positions in a criminal enterprise

spanning two decades. He was also attempting to represent Witness, who was testifying against Guerrero in exchange for a reduction in his sentence. Guerrero insists that this court must defer to his waiver of any conflict of interest. He cites *United States v. Garcia* for the proposition that "[i]f defendants may dispense with the right to be represented by counsel altogether, it would seem that they may waive the right to have their retained counsel free from conflicts of interest." 517 F.2d 272, 277 (5th Cir. 1975) (internal citations omitted). But the Supreme Court found in *Wheat* that "no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice." 486 U.S. at 160, 108 S.Ct. 1692. Courts have an "independent interest" in ensuring the fairness of trials, even if the defendant has waived any conflicts of interest. *Id.; see also United States v. Izydore*, 167 F.3d 213, 221 (5th Cir. 1999) ("[I]t is clear that a defendant's waiver does not necessarily preclude a district court from rejecting a defendant's counsel of choice when the overall circumstances of a case suggest a conflict of interest may develop."). To the extent that *Garcia* allowed an absolute waiver of any conflicts of interest, it is no longer good law....Guerrero's waiver of conflicts of interest will certainly operate to waive his rights, but it will not stop this court or district courts from "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. 1692. As the Supreme Court noted in *Wheat*, "multiple representation of criminal defendants engenders special dangers of which a court must be aware." *Id.* at 159, 108 S. Ct. 1692. A conflict of interest may "prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." *Id.* at 160, 108 S. Ct. 1692 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S. Ct. 1173, 55 L. Ed.2d 426 (1978)). Such conflicts may also preclude a defense attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution ...." *Holloway*, 435 U.S. at 490, 98 S. Ct. 1173.

*Id*. at 333-34.

In this case, Lurich finds himself in a position where one individual he formerly represented (according to the Government) may testify. That testimony may or may not implicate one or more

of his clients. Can Lurich, with any credibility, state that no circumstances will arise where he will forego cross-examination at the risk of not exposing some confidential information he received from the witness? Both Farr and Saintingan have the right to counsel unfettered at trial, not one who finds himself in a possible ethical quagmire. If one or more of his clients expresses the desire to plead, can Lurich zealously represent his client while representing another defendant who may be disadvantaged by the plea? The answer, of course, is no.

Jones argues that this is not a drug conspiracy case, and therefore the concerns about multiple representation are not the same. However, it is a *conspiracy* to launder monetary instruments case, and it appears from the indictment that some defendants have had a lesser role in the alleged conspiracy than others, raising many of the same issues with multiple representation that exists in a drug conspiracy case. Additionally, the primary target of the conspiracy is apparently "footing" the legal bill for the other two defendants. For all purposes, they are still employees of Arledge. The Court finds that this relationship alone engenders special dangers of which the Court must be aware. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed.2d 140 (1988).

The Court has found that not only is there potential conflict, there is also actual conflict. Lurich has shared privileged communications with multiple defendants whose interests are not aligned. Their alleged roles in the alleged conspiracy vary in degrees of alleged participation and culpability. Two of Lurich's three current clients' defense costs are being paid for by the third client, who also is their former employer and the owner of the business which is the subject of the criminal charges here. The facts before the Court present a quagmire of facts, obligations, and potential defenses which the Court cannot fathom – and Lurich has not shown – are not rife with multiple

6

conflicts.

The Court also notes that Arledge has selected Jones as his co-counsel and cannot see how Lurich's absence denies Arledge the right to counsel. The Court is not aware that Arledge's Sixth Amendment Rights extend to multiple counsel, only an effective counsel. Jones is an accomplished trial lawyer, and Lurich's disqualification in the Court's opinion does not infringe on his right to counsel. Further, as all defendants have been advised in this matter, if Farr or Saintignan cannot afford their own counsel, the Court will appoint an experienced criminal practitioner from the Court's CJA panel to represent them. The Court notes that nothing about the appointment or retention of separate counsel would affect the defendants' ability to work together, as they and their counsel determine is best, in defending their common interests.

Although each of the defendants expressed a knowing and voluntary waiver of their Sixth Amendment Rights, the Court decides that it must refuse to accept such waivers. "The right to counsel of choice ... is not absolute." *U.S. v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007). While there is a presumption in favor of a defendant's counsel of choice, the presumption may be overcome by an actual conflict of interest, or by a showing of a serious potential for conflict. *U.S. v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (citing *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). The Court has found both an actual conflict of interest and a serious potential for future conflicts here. If Lurich is allowed to remain as counsel, in light of the client's waiver of the known conflicts now, the Court is concerned that these conflicts might come to a head at trial such that a defendant might no longer waive them, giving grounds for a dismissal of counsel or a potential mistrial, and wasting the parties' and court's time and resources.

The Fifth Circuit has held that a defendant's desire to expressly waive the conflict does not abrogate the Court's discretion to determine a disqualification issue, and "the district court is allowed 'substantial latitude' to refuse such waivers in cases of either actual or potential conflict." *Sanchez Guerrero*, 546 F.3d at332. In this case, the Court finds that disqualification is the only appropriate solution to the multiple conflicts, potential conflicts and different interests in this case. Therefore, after due consideration, the Court finds that the Government's Motion to Disqualify Ryan K. Lurich and his law firm, Friedman & Feiger, LLP. (Dkt. 113) should be GRANTED.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 4th day of September, 2009.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE